**Patricia LUDWICZAK, Plaintiff,**

v.

**HITACHI CAPITAL AMERICA CORP., Defendant.**

**No. 3:05CV00239(DJS).**

United States District Court, D. Connecticut.

Dec. 27, 2007.

Steven M. Frederick, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, Vincent R. Fontana, Fontana & Broderick LLP, Garden City, NY, for Plaintiff.

Lawrence Peikes, Wiggin & Dana, Stamford, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The Plaintiff, Patricia Ludwiczak ("the Plaintiff"), brings this action against the Defendant, Hitachi Capital America Corporation ("the Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206(d) ("the EPA"). Specifically, the Plaintiff alleges that the Defendant violated Title VII and the EPA by discriminating against her on the basis of her sex, subjecting her to a hostile work environment, and retaliating against her because of her opposition to unlawful employment practices. Now pending is the Defendant's motion for summary judgment (dkt.# 32) pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED.**

## I. FACTS

The Defendant originally hired the Plaintiff as a credit analyst on December 16, 1991. The Plaintiff reported to Richard Drew ("Drew"), who was the Vice President and Chief Credit Officer at the time. In her capacity as a credit analyst, the Plaintiff was generally responsible for providing credit analysis, auditing the performance of the Defendant's account servicing vendors, handling the administration of portfolios, processing new business transactions, reviewing loan documentation, negotiating documents on behalf of the Defendant, and working on transactions. Sometime in 1994, the Defendant promoted the Plaintiff to Assistant Vice President. In this position, for which the Plaintiff claims she did not apply, the Plaintiff's fundamental duties remained unchanged.

In early February 1996, the Plaintiff complained that she was being treated unfairly by Drew, but did not expressly accuse Drew of "sexual discrimination." The Plaintiff alleges she could not use the term "sexual discrimination" because she feared that her job would be at risk and that she would face harassment.

Beginning in late 1997, the Plaintiff began reporting directly to Robert DeGenova ("DeGenova"), who at the time was the Vice President in charge of the Defendant's Syndications group. DeGenova was principally responsible for overseeing all activities in the Syndications area, providing advice to the Marketing group on potential transactions, and negotiating the sale of the Defendant's assets to financial institutions on favorable terms. The Plaintiff reported to DeGenova for the balance of her tenure with the Defendant.

In 2002, DeGenova was promoted to Senior Vice President and became part of the Defendant's Senior Management Team. As a member of the Senior Management Team, DeGenova was one of approximately six senior-level executives responsible for the Defendant's overall management. In April 2002, during the course of the annual year-end Senior Management meeting, DeGenova recommended that the Plaintiff be promoted to Vice President. That recommendation was briefly discussed and rejected. According to the Defendant, Senior Manage-

ment cited a number of reasons for rejecting DeGenova's recommendation, such as the absence of a need for a Vice President in the Syndications group and the perception that the Plaintiff was not a "team player," lacked motivation and initiative, was unwilling to help out other departments, and was not respected by her peers. The Plaintiff, for her part, asserts that the reasons given by Senior Management were simply excuses for wrongfully denying her a promotion.

At the April 2003 Senior Management meeting, DeGenova again raised the idea of promoting the Plaintiff to the Vice President level. Senior Management again rejected the recommendation, apparently citing similar concerns as had been articulated during the previous year's meeting. Thereafter, DeGenova did not recommend the Plaintiff for a promotion again. The Plaintiff has testified that her desire to be promoted was known to DeGenova; however, according to the Plaintiff, she was told by DeGenova to not make a formal, written request for a promotion. The Plaintiff testified that, besides DeGenova, she never approached Senior Management about the possibility of being promoted.

From July 2002 until February 2003, the Plaintiff was stationed at a cubicle near Gerry Quirconi ("Quirconi"). According to the Plaintiff, Quirconi made a number of inappropriate sexual or profane comments, one of which was directed at her. The Plaintiff has testified that she went out to dinner one night with a Japanese visitor. The next day at work, Quirconi allegedly said to the Plaintiff, "[H]ey, Patty, I heard you were a real party girl last night. I heard you were grinding that Japanese guy right on the dinner table." (Dkt. # 36, Ex. A, Ludwiczak Depo. at 168:2–4.) Furthermore, in the Complaint, the Plaintiff alleges that her cubicle was next to a "male employee," presumably Quirconi, who frequently made such statements as: "I just got fucked up the ass"; "How was her pussy?"; and "Her pussy smells like fish." (Dkt. # 1 ¶ 28.) These comments were not, however, directed specifically at the Plaintiff. The Plaintiff maintains that she was shocked and outraged by Quirconi's conduct and complained to DeGenova, but no action was taken against Quirconi. In February 2003, the Plaintiff moved away from Quirconi and into DeGenova's office.

Prior to 2002, the Defendant had been very active in "big ticket" lending and syndications. According to the Defendant, its parent company subsequently became concerned about the level of risk associated with the Defendant's portfolio, and instructed the Defendant to sell off substantial assets. Starting in 2002, the Defendant experienced a steep decline in the number and volume of syndication deals. The Defendant performed 299 syndication deals in 2001, yet only 72 in 2003. In addition, the dollar volume of asset sales in 2001 was more than three times the amount generated in 2003. In late 2003, the Defendant combined the "big ticket" marketing and syndication groups and placed them both under DeGenova's direction. Thereafter, in April 2004, the Defendant eliminated both the Plaintiff's position and a marketing position held by Leon Branam ("Branam"), and terminated their employment.

The Plaintiff maintains that, just prior to her termination, she had again asked DeGenova to be promoted. According to the Plaintiff, the Defendant never posted positions for Vice President or Senior Vice President, yet others working for the Defendant had been promoted without applying for the promotion. The Plaintiff asserts that, although her knowledge and experience justified her being promoted,

the Defendant wrongfully failed to promote her. The Plaintiff filed her complaint with the Equal Employment Opportunity Commission ("EEOC") on August 14, 2004.

## II. DISCUSSION

The Plaintiff alleges that the Defendant's conduct violated Title VII and the EPA. The Defendant asserts that some of the Plaintiff's claims are time-barred, and that the Plaintiff's claims fail as a matter of law. The court shall discuss the Plaintiff's claims seriatim.[1]

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am.*

*Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. TITLE VII TIME BAR/STATUTE OF LIMITATIONS ANALYSIS

The Plaintiff alleges that she was discriminated against because of sex in violation of Title VII. "An individual wishing to challenge an employment practice under [Title VII] must first file a charge with the EEOC." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, —— U.S. ——, ——, 127 S.Ct. 2162, 2166, 167 L.Ed.2d 982 (2007). "Such a charge must be filed within a specified period. . . ." *Id.* Therefore, before addressing the merits of the Plaintiff's substantive Title VII claims, the court

---

1. The Plaintiff begins by arguing that the Defendant's motion for summary judgment should be denied as premature because of the pendency of her motion to compel the production of email messages she exchanged with DeGenova. The court is not persuaded by this argument. First, the Plaintiff, by not filing an affidavit on this matter, failed to follow the requirement of Rule 56(f), which sets forth the specific procedure by which a party lacking information necessary to oppose summary judgment may seek further discovery. *See* Fed.R.Civ.P. 56(f); *Aetna Cas. and*

*Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573 (2nd Cir.2005). Second, on May 11, 2006, the Honorable Donna F. Martinez denied the Plaintiff's motion to compel, (*see* dkt. # 54), rendering the Plaintiff's argument here moot. Third, the Plaintiff filed a supplemental opposition memorandum on December 28, 2006, in which the Plaintiff did not argue that the lack of discovery precluded her from opposing summary judgment, or that more discovery was needed. Therefore, the Defendant's motion for summary judgment shall not be denied as premature.

must first determine whether the allegedly discriminatory acts are properly before the court.

In general, Title VII discrimination claims must be filed with the EEOC within 180 days of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If, however, a claimant has filed a charge of discrimination in a state or locality that has its own antidiscrimination laws and enforcement agency, the time period for filing claims with the EEOC is extended to 300 days from the date of the unlawful practice. *Id.; see Edelman v. Lynchburg Coll.*, 535 U.S. 106, 109 n. 1, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). Connecticut has its own antidiscrimination agency, the CHRO. Thus, the 300–day limitation applies to the Plaintiff's claims here. "This requirement functions as a statute of limitations, ... in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court...." *Quinn*, 159 F.3d at 765 (internal citations omitted); *see Ledbetter*, 127 S.Ct. at 2166–67 ("[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court....")

■ Nevertheless, "[d]iscriminatory acts occurring before the 300–day charging period may be saved from time bar by the 'continuing violation' doctrine, which offers one means by which plaintiffs can assert otherwise time-barred acts, as 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Pearson v. Bd. of Educ.*, 499 F.Supp.2d 575, 590 (S.D.N.Y.2007) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.1985)). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.2001) (internal quotation marks omitted). "[T]he continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination...." *Id.* "[A] continuing violation may be found where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* (internal quotation marks omitted). Still, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993).

■ As for a hostile work environment claim, which is a type of "continuing violation" claim, "[g]iven ... that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* Nevertheless, the Supreme Court, in distinguishing "discreet acts" from "ongoing violations" (such as a hostile work environment), noted that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114, 122 S.Ct. 2061.

Here, the Plaintiff filed her complaint with the Equal Employment Opportunity Commission ("EEOC") on August 14, 2004. Consequently, the earliest "discreet act" of discrimination the court can consider must have occurred on October 19, 2003, which is 300 days before the Plaintiff filed her August 14, 2004 EEOC complaint.[2] For the purposes of the Plaintiff's Title VII hostile work environment claim, the court can consider conduct that occurred before October 19, 2003 if the last discriminatory act alleged took place within the 300–day limitation period; however, for the purposes of the Plaintiff's Title VII discrimination and retaliation claims, only the acts that fall within the 300–day limitation period (here, the April 11, 2003 performance review and the April 15, 2003 termination) shall be considered. *See Richards v. City of New York,* No. 05 CV 1163(SLT)(MDG), 2007 WL 1030294, at *8 (E.D.N.Y. Mar. 30, 2007). That is, the Plaintiff is precluded from asserting in this action any pre-October 19, 2003 conduct as specific, compensable acts of discrimination or retaliation under Title VII. But, "time-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." *Nakis v. Potter,* 422 F.Supp.2d 398, 410 (S.D.N.Y.2006); *see Morgan,* 536 U.S. at 113, 122 S.Ct. 2061 ("Nor does the statute bar an employee from using prior acts as background evidence to support a timely claim.").

### C. TITLE VII FAILURE–TO–PROMOTE AND TERMINATION CLAIMS

Title VII of the Civil Rights Act of 1964 directs that it is "unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The Plaintiff alleges that she was discriminated against because of sex. As discussed above, the only acts the court may consider as specific, compensable acts of discrimination must have occurred on or after October 19, 2003. Thus, the Plaintiff's 1996 complaint about her allegedly unfair treatment by Drew; the April 2002 rejection of DeGenova's recommendation to promote the Plaintiff; the April 2003 rejection of DeGenova's recommendation to promote the Plaintiff; and the inappropriate sexual or profane comments made by Quirconi made between July 2002 and February 2003, cannot be considered for this claim. The court can consider, however, the alleged rejection of the Plaintiff's request for promotion before she was terminated[3] and the termination itself.

Substantive Title VII claims, including failure-to promote-claims brought pursuant to Title VII, are analyzed using the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Johnson v. Conn. Dept. of Corr.,* 392 F.Supp.2d 326, 333 (D.Conn.2005). The Second Circuit has described the applicable legal standard for the evaluation of Title VII claims as follows:

At the outset, a plaintiff can avoid dismissal by presenting the "minimal" pri-

---

**2.** The Defendant calculates the 300–day period as beginning on October 21, 2003. The discrepancy between the court's calculation and the Defendant's calculation is immaterial to this analysis, however, as no discrete acts are alleged to have occurred on October 19, 20, or 21, 2003.

**3.** It appears that this last request for a promotion may have occurred in March 2004. (*See* dkt. # 36, Ex. A, Ludwiczak Depo. at 57:14–22.)

ma facie case defined by the Supreme Court in *McDonnell Douglas.* This requires no evidence of discrimination.... By making out this "minimal" prima facie case, even without evidence of discrimination, the plaintiff creates a presumption that the employer unlawfully discriminated, ... and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action....

On the other hand, once the employer articulates a non-discriminatory reason for its actions, ... the presumption completely drops out of the picture.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated ... remains at all times with the plaintiff.... Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment (or to the overturning of a plaintiff's verdict) unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.

*James v. N.Y. Racing Ass'n,* 233 F.3d 149, 153–54 (2d Cir.2000) (internal quotations marks and citations omitted).

### 1. Failure to Promote

■ "To establish a *prima facie* case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.,* 385 F.3d 210, 226 (2d Cir.2004) (internal quotation marks omitted). The Plaintiff undoubtedly is a member of a protected class under Title VII. The Defendant argues that the Plaintiff's failure to formally apply for a

promotion, and the lack of a job for which the employer was seeking applicants, are fatal to the Plaintiff's failure-to-promote claim because the second element of the *prima facie* case would not be satisfied.

■ The court agrees with the Defendant in that the Plaintiff has failed to establish a *prima facie* case here. It is true that, ordinarily, "the second element of a *prima facie* case cannot be established merely with evidence that a plaintiff generally requested promotion consideration. A specific application is required to ensure[ ] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." *Id.* at 227 (internal quotation marks omitted). "[This] requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc." *Id.* "The requirement also protects employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply." *Id.* (internal quotation marks omitted).

■ It is undisputed that the Plaintiff did not formally apply for a promotion, which normally would be fatal to her claim. The Plaintiff contends, however, that she should be excused from this requirement because, during her employment with the Defendant, the Defendant had no formal "posting policy" to advise employees of promotional opportunities; the Defendant granted promotions without formal requests; and DeGenova consistently ad-

vised the Plaintiff to not make formal requests for a promotion. "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id.* Thus, the Plaintiff's submissions and testimony could be sufficient to demonstrate that she would be exempt from the "specific application" requirement.

Nevertheless, although the Plaintiff's informal promotion requests to DeGenova might be sufficient to constitute an "application" for a promotion, the Plaintiff's claim still suffers from a terminal flaw. The Plaintiff has not demonstrated the existence of a job for which the Defendant was seeking applicants. That is to say, although the Plaintiff may have continually asked to be promoted to Vice President in the Syndications group, there is no indication that the Defendant actually sought, either formally or informally, applicants for such a position. In 2002 and 2003, DeGenova had recommended that the Plaintiff be promoted, but that recommendation was rejected by Senior Management. The Plaintiff believes those rejections show that she was wrongfully denied a promotion. In the court's view, however, those rejections could simply indicate that there was no vacancy, or, assuming there were a vacancy, the Defendant's Senior Management did not want to fill it. This view is supported by the fact that DeGenova made his recommendations in both 2002 and 2003, meaning that, during that time, not only was the position of Vice President in the Syndications group not given to the Plaintiff, it was not given to anybody. Furthermore, the Plaintiff has not indicated or demonstrated that, after her 2004 request for a promotion, the Defendant either hired someone else as the Vice President in the Syndications group or continued to seek applicants having the Plaintiff's qualifications. Simply put, in the absence of any evidence that the Defendant actually sought, either formally or informally, applicants for a Vice President in the Syndications group, the Plaintiff cannot establish a *prima facie* failure-to-promote case under Title VII. Consequently, with regard to the Plaintiff's Title VII failure-to-promote claim, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED.**

## 2. Termination

■ The Plaintiff also alleges that her termination was a result of wrongful sex discrimination in violation of Title VII. Here, her *prima facie* case "is satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action, and preference for a person not of the protected class." *James,* 233 F.3d at 153–54 (internal quotation marks omitted). There is no dispute that the Plaintiff is a member of a protected class under Title VII, was qualified for her position, and, via her termination, suffered an adverse employment action. It is unclear what the "preference for a person not of the protected class" is. Nonetheless, because the Plaintiff's burden here is "minimal," *see id.* at 154, the court shall assume that she has satisfied her *prima facie* case.

The burden then shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted). Sun has articulated such a reason, i.e., the decline in its "big ticket" transactions and

market, and the Defendant's shift in focus away from "big-ticket" deals to smaller transactions.

Because the Defendant has articulated non-discriminatory reasons for its conduct, "the *McDonnell Douglas* framework—with its presumptions and burdens-disappear[s], . . . and the sole remaining issue [is] discrimination *vel non* . . . ." *Id.* at 142–43, 120 S.Ct. 2097 (internal citations and quotation marks omitted). That is, the Plaintiff now must point to evidence that reasonably supports a finding of prohibited discrimination, i.e., that the Defendant's proffered non-discriminatory reasons are merely pretext for wrongful discrimination.

■ In the court's view, the Plaintiff has failed to demonstrate that the Defendant's reasons for her termination were pretextual and that she was wrongfully terminated because of her sex. Quite simply, the Plaintiff has submitted no evidence showing that she was terminated because she is a woman. The Plaintiff's memoranda of law make no persuasive argument with regard to this claim. Instead, the Plaintiff makes general statements that she "claims that she was terminated because of her sex" and that "[i]t is clearly a question for the jury to decide" whether her termination violated Title VII. During this summary judgment process, however, the Plaintiff, as the nonmoving party, must "make a sufficient showing on [the] essential element[s] of [her] case with respect to which [she] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Absent such a showing for her Title VII wrongful discharge claim, the Plaintiff fails to establish a genuine issue of material fact that must be decided by a jury. The Plaintiff's bald assertions of discrimina-

tion,[4] without any supporting evidence of such discrimination, are insufficient to allow her claim to survive summary judgment.

Moreover, the evidence before the court indicates that the Plaintiff's termination was not based on her sex, as Branam, who is a man, was terminated at the same time. In the court's view, this fact undercuts the Plaintiff's argument. According to the Plaintiff, it supposedly stretches the imagination to believe that the termination of these two people was all that was needed to overcome the Defendant's declining earnings. The Plaintiff believes this is sufficient to demonstrate pretext. Such an argument, though, is unavailing to the Plaintiff. It is not the court's function to determine whether the Defendant's strategy in overcoming declining earnings was sound. In addition, the Plaintiff states that, to overcome declining earnings, all the Defendant did was terminate two people. The court, though, is not privy to (and the parties have not briefed the court on) every aspect of the Defendant's conduct in this regard. The court does not know everything the Defendant did or did not do to increase earnings, and the court doubts that the Plaintiff does, either. In the end, it appears that the Plaintiff's wrongful termination claim rests on the facts that she is a female and that she was terminated. These facts are insufficient, without more, to demonstrate that her termination was a result of sex discrimination. Consequently, with regard to the Plaintiff's Title VII wrongful termination claim, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED**.

## D.  TITLE VII RETALIATION CLAIM

■ Title VII prohibits retaliation against employees who exercise rights pro-

---

4.  The Plaintiff's testimony that she was terminated for "personal reasons" does not demonstrate that her termination resulted from sex discrimination. "Personal reasons" can denote a myriad of motivations that do not include sex discrimination.

tected by the statute. *See* 42 U.S.C. § 2000e–3(a). Like substantive Title VII discrimination claims, retaliation claims brought pursuant to Title VII are reviewed under the *McDonnell Douglas* burden-shifting framework. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir.2003) ("The *McDonnell Douglas* burden shifting analysis used in claims of discrimination in violation of Title VII also applies to retaliation claims brought pursuant to Title VII.") First, "[t]he complainant in a Title VII [case] must carry the initial burden under the statute of establishing a *prima facie* case...." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "In order to establish a *prima facie* case of retaliation, [a plaintiff] must show that: (1)[ ]he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir.2006).

Next, if a plaintiff establishes a *prima facie* case, "[t]he burden then must shift to the [defendant] to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Finally, if the defendant does articulate a legitimate, nondiscriminatory reason for the adverse employment action, "[t]he plaintiff then has the opportunity to prove 'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext....'" *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir.2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

The court finds that summary judgment must be granted on the Plaintiff's retaliation claim. First, the Plaintiff appears to have abandoned this claim. "'Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" *Douglas v. City of Waterbury*, 494 F.Supp.2d 112, 122 (D.Conn.2007) (quoting *Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003)); *see Barlow v. Connecticut*, 319 F.Supp.2d 250, 266–67 (D.Conn.2004); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F.Supp.2d 233, 249 (S.D.N.Y. 2002) (dismissing one of the plaintiff's claims as "abandoned" where the plaintiff's summary judgment opposition papers "made no argument in support of [that] claim at all"). The Defendant has moved for summary judgment on all of the Plaintiff's claims, and has specifically presented arguments in its memorandum of law regarding the Plaintiff's retaliation claim. The Plaintiff, however, has not submitted any argument in opposition. Because the Plaintiff does not address these claims in her memoranda opposing the Defendant's summary judgment motion, the court shall deem them abandoned.

Furthermore, the court points out that, even if the Plaintiff's retaliation claim were not abandoned, there is no indication that the Plaintiff participated in a protected activity that could support her retaliation claim. Apparently, the Plaintiff has attributed the Defendant's alleged retaliatory conduct to conversations or complaints she made in the mid–1990s about the alleged harassment of another female employee. Because the Plaintiff has not addressed her retaliation claim, however, it is unclear whether the Plaintiff's conduct here would constitute a protected activity. That is, the court does not know the reasons for the alleged harassment of that female em-

ployee, or whether the Plaintiff's conduct implicated Title VII.

Additionally, the Plaintiff cannot establish a causal connection between her conduct in the mid–1990s and the alleged retaliatory actions taken against her in this case. In the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish this temporal relationship. *See Deravin v. Kerik,* No. 00 CV 7487(KMW)(KNF), 2007 WL 1029895, at *11 (S.D.N.Y. Apr 02, 2007) (collecting cases). The time periods involved here go well beyond a year, even for the 2002 and 2003 promotion denials, which the court cannot consider for the retaliation claim. Thus, even if the Plaintiff's retaliation claim were not abandoned, the Plaintiff has still failed to establish a prima facie retaliation case. Consequently, with regard to the Plaintiff's retaliation claim, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED.**

## E. SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

In the Complaint, the Plaintiff alleges that she was subject to sexual harassment and a hostile work environment. In her opposition memorandum, however, the Plaintiff represents that she is withdrawing her sexual harassment and hostile work environment claims. Consequently, with regard to the Plaintiff's sexual harassment and hostile work environment claims, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED.**

## F. WAGE DISCRIMINATION

### 1. EPA

The Plaintiff next alleges that the Defendant violated the EPA by paying her less than DeGenova. The relevant portion of the EPA reads as follows:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1). "To prove discrimination under the Equal Pay Act, a plaintiff must show that: i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Lavin–McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir.2001) (internal quotation marks omitted). "With regard to the second point, [a] plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility." *Id.* (internal quotation marks omitted).

If a plaintiff makes out a *prima facie* case under the EPA, "the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: (i) a seniority system; (ii) a merit system; (iii) a system which measures

earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) (internal quotation marks omitted). "Following such proof by the employer, the plaintiff may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Id.*

■ In the court's view, the Plaintiff has not established a *prima facie* case under the EPA. The male employee to whom the Plaintiff compares herself is De-Genova. According to the Plaintiff, DeGenova received a greater distribution of the "bonus pool," to which both the Plaintiff and DeGenova contributed.[5] As the Plaintiff points out, DeGenova's title of Senior Vice President is not, by itself, dispositive here (i.e., the fact that DeGenova held that title, and that the Plaintiff did not, does not mean that the Plaintiff cannot establish a *prima facie* case). Nevertheless, DeGenova was the Plaintiff's supervisor and she reported to DeGenova from 1997 until her termination. That fact alone is sufficient to demonstrate that the Plaintiff and DeGenova did not share equal responsibility for their work, even if their skill and effort in the generation of profits for the bonus pool were equal.

Moreover, assuming that the Plaintiff could establish a *prima facie* case, it is obvious that DeGenova was senior to the Plaintiff in the Defendant's corporate structure. Thus, the fact that the Plaintiff might have put equal, or even more, effort into generating profits for the bonus pool becomes irrelevant. It is entirely possible that, under the Defendant's policies, a Senior Vice President is entitled to a greater percentage of the bonus pool than an Assistant Vice President, regardless of who generated the most profits.[6] As a result, the Plaintiff's EPA claim fails as a matter of law. Consequently, with regard to the Plaintiff's EPA claim, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED.**

### 2. Title VII

■ In addition to asserting a claim under the EPA, a plaintiff can assert a claim for unequal pay for unequal work under Title VII. Such claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *See id.* at 139. "In order to make out a *prima facie* case of unequal pay for equal work under Title VII, a plaintiff must show that (1) she is a member of a protected class; and (2) she was paid less than non-members of her class for work requiring substantially the same responsibility." *Id.* at 139. "In addition to the requirements that are generally the same as those under the EPA, a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a *prima facie* case of intentional sex-based salary discrimination." *Id.*

The Plaintiff's Title VII wage discrimination claim fails for the same reasons the court pointed out in discussing the Plain-

---

**5.** The Plaintiff does not seem to argue that the disparity between the Plaintiff's salary and DeGenova's salary gives rise to a EPA claim. The Plaintiff has conceded that "it is true Mr. DeGenova is a Senior Vice President with a wide range of duties and responsibilities that [the Plaintiff] did not have, [and] Mr. DeGenova was compensated for those duties by way of a higher salary than [the Plaintiff] received." (Dkt.# 58, p. 2.)

**6.** The Plaintiff presents no evidence in this regard, but her EPA claim would have been bolstered if she had been able to show the court a policy of the Defendant requiring that distribution of the bonus pool be directly proportional to the effort and skill used by an employee in generating profits.

tiff's EPA claim. The Plaintiff cannot make a *prima facie* showing that she was paid less than non-members of her class for work requiring substantially the same responsibility because the employee to whom she compares herself, (i.e., DeGenova, who was the Plaintiff's supervisor and was senior to her in the Defendant's corporate structure), had greater responsibility than she did. Indeed, if a plaintiff fails to make out a *prima facie* showing under the EPA, she necessarily fails to make a *prima facie* showing for sex-based salary discrimination under Title VII. *See Guglielmo v. Marchon Eyewear, Inc.*, No. 02 CV 5434(SLT), 2006 WL 398617, at *9 (E.D.N.Y. Feb.16, 2006). Additionally, the Plaintiff has not submitted evidence of "discriminatory animus," which is an extra requirement for Title VII claims. Consequently, with regard to the Plaintiff's Title VII wage discrimination claim, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED**.

### III.  CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (dkt.# 32) is **GRANTED**. Judgment in favor of Hitachi Capital America Corporation shall enter on all counts of the Complaint. The Clerk of the Court shall close this file.

**SO ORDERED.**