Barbara LAVIN–McELENEY,
Plaintiff–Appellee–Cross–
Appellant,

v.

MARIST COLLEGE, Defendant–
Appellant–Cross–Appellee.

Nos. 99–9324(L), 99–9368(XAP).

United States Court of Appeals,
Second Circuit.

Argued May 11, 2000.

Decided Feb. 02, 2001.

ROBERT E. DINARDO, Esq., Jacobowitz Gubitts, LLP, Walden, N.Y. (Nicholas E. Tishler and Anna Georgiou, on the brief), for Plaintiff–Appellee.

MICHAEL T. McGRATH, Putney, Twombly Hall & Hirson LLP, New York, N.Y. (Larissa A. Cason, on the brief), for Defendant–Appellant.

Before: JOHN M. WALKER, Jr., Chief Judge, KEARSE and POOLER, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge:

Defendant Marist College ("Marist") appeals from an amended judgment of the United States District Court for the Southern District of New York (Mark D. Fox, *Magistrate Judge*),[1] awarding plaintiff back pay, liquidated damages, attorneys' fees and costs, for a total judgment of $117,929.98 after a jury found that Marist had paid plaintiff, Dr. Barbara Lavin–McEleney, less than comparable men in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1).

On appeal, Marist argues that the district court should have granted its motion for summary judgment because plaintiff failed to state a *prima facie* case on the grounds that she did not identify any higher-paid comparable male employee and that the absence of such a comparator could not be remedied by comparing herself to a statistically average male employee. Plaintiff cross-appeals, arguing that the special jury verdict form erroneously instructed the jury to ignore her claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, if it found that any violation of the Equal Pay Act was not

1. Sitting by consent of the parties pursuant to    28 U.S.C. § 636(c).

willful. We hold that plaintiff identified a comparable male employee, that her use of a statistical average was permissible under the circumstances, and that the special jury verdict form did not constitute plain error. We therefore affirm.

## BACKGROUND

Marist offers a four-year undergraduate education. It is organized into six divisions, one of which is the Social and Behavioral Sciences Division. That division comprises four departments: Criminal Justice, Psychology, Social Work, and Teacher Education.

Marist hired plaintiff to teach criminal justice in 1976. Plaintiff does not allege gender bias in the establishment of her initial salary; she asserts instead that later raises were discriminatory. During the 1981–1982 academic year, plaintiff was granted tenure, and during the 1984–85 academic year, after a performance evaluation, she was promoted to Associate Professor. Between 1976 and 1989, plaintiff received every across-the-board and merit-based salary increase for which she was eligible, but Marist did not promote her to full professor.

In a letter dated May 15, 1989, plaintiff first raised the issue of unequal pay with Marist when she requested an increase in her salary, which was $ 31,788 at the time. Marist responded that plaintiff's request was being forwarded to the appropriate administrator but apparently took no further action. In 1992, plaintiff renewed her request. Marist created a committee to study, among other things, possible gender disparities among salaries at the college, and in 1994 the committee distributed its report to the faculty.

Upon reading the report, plaintiff filed a formal request to have her salary reviewed for gender disparity. Dr. Dennis Murray, Marist's president, investigated plaintiff's complaint, met with plaintiff, and concluded that she was fairly compensated.

Plaintiff contends she was never informed of this decision. Plaintiff thereafter filed a complaint with the Equal Employment Opportunity Commission, which issued a right-to-sue letter, and she subsequently brought suit in district court. Her amended complaint alleged violations of Title VII and the Equal Pay Act.

At trial, plaintiff's expert, Dr. Michael Parides, presented statistical evidence showing that she was paid less than comparable male professors at Marist. Dr. Parides's statistical method, multiple regression analysis, was designed to eliminate the influence on any observed gender disparity of five factors (in statistical argot, to "control" for five "independent variables"): rank, years of service, division, tenure status, and degrees earned. Dr. Parides found that plaintiff was paid significantly less than comparable male professors within the division.

Marist's expert, Dr. Orley Ashenfelter, performed a similar multiple regression analysis, controlling for the same five independent variables. Like Dr. Parides, Dr. Ashenfelter compared salaries across divisions, not departments. Both experts found a difference in pay between comparable women and men. Their principal disagreement was over the statistical significance of that difference: Dr. Parides found that gender difference could reliably predict a salary discrepancy, while Dr. Ashenfelter concluded that the observed gender disparity could easily have been caused by chance.

Marist also presented testimony by Dr. Marilyn Poris, a Marist employee, who had served on the compensation committee and had advised Marist management on issues of salary equity. When Dr. Poris first analyzed the Marist data using a regression analysis similar to that used by the other two experts, she also found a gender-based salary difference among professors with experience equivalent to that of plaintiff.[2] Dr. Poris went a step further

2. Dr. Poris used a type of multiple regression analysis called "stepwise regression." She also used somewhat different independent variables from those used by the other two experts. Because the results of Dr. Poris's regression analysis are not questioned on ap-

than the other experts, however, and employed a non-statistical method, "content analysis," which is generally used to explain a relationship that is statistically supported. On the basis of that technique, and by examining nationwide education compensation data compiled by the College and University Personnel Association ("CUPA"), she concluded that the observed statistical difference was caused not by gender, but by a "masked variable": the distinction between departments within each division. Marist paid female professors less not because of gender discrimination, she testified, but because they chose to teach in disciplines, such as Criminal Justice, that drew lower salaries in the national labor market.

At the close of plaintiff's case, Marist moved unsuccessfully for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). The jury found for plaintiff on the Equal Pay Act claim, but decided that Marist's violation of the Act was not willful. Consistent with the special verdict form, which instructed the jury not to consider plaintiff's Title VII violation if it found that Marist's violation of the Equal Pay Act was not willful, the jury did not find Marist liable on plaintiff's Title VII claim. On October 29, 1998, Marist renewed its motion for judgment as a matter of law pursuant to Fed.R .Civ.P. 50(b). The motion was denied. The district court subsequently amended the judgment in plaintiff's favor on her Equal Pay Act claim to include, in addition to back pay, attorneys' fees, liquidated damages, and costs. *See Lavin McEleney v. Marist Coll.*, No. 96 Civ 4081, slip op. (S.D.N.Y. Sept. 28, 1999). This appeal followed.

## DISCUSSION

On appeal, Marist argues that plaintiff failed to make out a *prima facie* case of discrimination under the Equal Pay Act. In her cross-appeal, plaintiff maintains that the special jury verdict form erroneously instructed the jury not to consider her Title VII claim if it found that any

peal, we do not address evidence concerning

Equal Pay Act violation was not willful. We take each claim in turn.

## I.

Marist argues that plaintiff failed to make out a *prima facie* case on the grounds that she did not identify a higher-paid male professor in her department and that she impermissibly compared herself to a male employee statistical composite, rather than an actual male employee.

■ We note at the outset that Marist incorrectly framed its appeal. "It is well-established that once a [discrimination] case has been fully tried on the merits, the question whether the plaintiff has established a prima facie case is no longer relevant." *Ottaviani v. State Univ. of N.Y. at New Paltz*, 875 F.2d 365, 373 (2d Cir.1989) (internal quotation marks omitted) ("Since the plaintiffs fully litigated those claims, any arguments on appeal directed at whether or not plaintiffs established a prima facie case are arguably misleading and misplaced."). As the Supreme Court has noted, "the only issue to be decided at that point is whether the plaintiffs have actually proved discrimination." *Bazemore v. Friday*, 478 U.S. 385, 398, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (Brennan, J., concurring in part, joined by all other members of the Court). We therefore construe Marist's appeal as a challenge to the district court's denial of its Rule 50(a) motion for judgment as a matter of law.

■ We review the denial of Rule 50 motions de novo, applying the same standards employed by the district court. *See DiSanto v. McGraw–Hill, Inc.*, 220 F.3d 61, 64 (2d Cir.2000) (per curiam). Marist faces a high bar. We will reverse only if the evidence, drawing all inferences in favor of the non-moving party and giving deference to all credibility determinations of the jury, is insufficient to permit a reasonable juror to find in her favor. *See id.* Accordingly,

the relative merits of stepwise regression.

judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Id.* (internal quotation marks omitted).

■ To prove discrimination under the Equal Pay Act, a plaintiff must show that: "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (internal quotation marks omitted); *see also* 29 U.S.C. § 206(d)(1). With regard to the second point, "[a] plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal'" in skill, effort, and responsibility. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995).

### A. *The Existence of a Male Comparator*

■ Marist cites to a decision from the Fourth Circuit Court of Appeals holding that in order to show equal skill, effort, and responsibility, a plaintiff "must identify a particular male 'comparator' for purposes of the inquiry," *Strag v. Bd. of Trs.*, 55 F.3d 943, 948 (4th Cir.1995), and claims that no such comparison exists in this case. We express no opinion on the merits of such a rule, because we conclude that, even if we were to adopt it, plaintiff here has identified a specific male comparator.

Only two other professors were comparable to plaintiff in each of the five categories identified by the expert witnesses. Both were Assistant Professors who had approximately twenty years of service at Marist, taught in the Social and Biological Sciences Division, had tenure, and held a doctorate degree. Both members of this comparison group taught in the Psychology department. One was a woman, Marjorie Schratz, who was the highest-paid of the three; in the 1996–97 academic year her salary was $48,533. In the same academic year, the other member of the comparison group, Royce White, a man, was paid $46,168, which was more than plaintiff's salary of $44,900. We think that plaintiff identified in Professor White a specific male comparator.

In an effort to defeat this conclusion, Marist argues that the comparison should be confined to other professors in the Criminal Justice department, not to those in the entire Biological Sciences division. Marist's argument is that Professor White's position in a different department within the division requires greater skill, effort, and responsibility than plaintiff's position.

■ Whether two positions are "substantially equivalent" for Equal Pay Act purposes is a question for the jury. *See Tomka*, 66 F.3d at 1311 ("[I]t is for the trier of fact to decide if [there] is a significant enough difference in responsibility to make the jobs unequal."); *see also Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir.1983) (noting that whether two jobs are substantially equal is a question of fact). As noted above, the only witness to have relied on the departmental distinction was Dr. Poris and then only on the basis of content analysis. Dr. Poris's methodology in general, and content analysis in particular, came under significant attack at trial. *See Lavin–McEleney*, No. 96 Civ. 4081, slip op. at 4 ("Dr. Poris analyzed the data . . . using a type of analysis called 'content analysis,' the validity of which was disputed at trial.").

The cases cited by Marist, in which courts found that the plaintiff had offered insufficient evidence that jobs in different departments were substantially equal, are distinguishable. *See Fisher v. Vassar Coll.*, 70 F.3d 1420, 1452 (2d Cir.1995) (noting that plaintiff had produced no evidence that she performed work equivalent to that

of her comparator); *Strag*, 55 F.3d at 950 (rejecting a comparison between plaintiff's mathematics department and a male professor's biology department, absent a showing that the two positions entailed substantially equal skill, effort, and responsibility).[3] In contrast, plaintiff here presented substantial evidence at trial that the five variables used by her expert to isolate comparable positions accurately captured equality of skill, effort, and responsibility. Moreover, Dr. Parides testified that departmental differences within divisions were not associated with differences in salary.

We conclude that there was sufficient evidence for a reasonable juror to have found that Professor White's position was substantially equal to plaintiff's. We therefore believe that plaintiff has identified a male comparator.

B.  *Comparison to an Average Male*

■ Marist next argues that plaintiff should not be permitted to establish a *prima facie* case by comparing herself to a statistical composite of male faculty members. Marist relies again primarily on a case from the Fourth Circuit: "[t]he plaintiff may not compare herself to a hypothetical male with a composite average of a group's skill, effort, and responsibility." *Houck v. Va. Polytechnic Inst. & State Univ.*, 10 F.3d 204, 206 (4th Cir.1993); *see also Pollis v. New Sch. for Soc. Research*, 913 F.Supp. 771, 784 (S.D.N.Y.1996) ("[I]t is doubtful whether statistics tending to demonstrate a difference between the average salaries paid to male and female employees can satisfy plaintiff's *prima facie* burden."), *rev'd in part on other grounds*, 132 F.3d 115 (2d Cir.1997). In language not quoted by Marist, however, the *Houck* court stated that the plaintiff "must identify a particular male for the inquiry." *Houck*, 10 F.3d at 206. *Houck*

stands for the proposition that plaintiff may not substitute a statistical male comparator for an actual one. Plaintiff here has identified an actual male comparator. Furthermore, after its decision in *Houck*, the Fourth Circuit has implied that once a male comparator has been identified, statistical averages may be employed. *See Strag*, 55 F.3d at 950. In fact, that court, in both *Strag* and *Houck*, has indicated that such evidence may be *required* because isolated incidents of discrimination may not be sufficient to make out a *prima facie* case. *See Strag*, 55 F.3d at 950; *Houck*, 10 F.3d at 206–07.

We hold that statistical evidence of a gender-based salary disparity among comparable professors properly contributed to plaintiff's case in conjunction with her identification of a specific male comparator. Because plaintiff was the only Assistant Professor of equivalent seniority in the Criminal Justice department, and one of only three in her division, experts for both sides extrapolated from the pool of the entire faculty at Marist to establish a sufficiently large statistical sample size. We think this was permissible not only to establish liability, but also in calculating damages.

The problem with comparing plaintiff's pay only to that of a single male employee is that it may create the impression of an Equal Pay Act violation where no widespread gender discrimination exists. Moreover, in the calculation of damages, such a comparison may either grant the plaintiff a windfall where the male comparator is paid particularly well, or improperly limit her recovery where the male comparator, though better compensated than she, is paid less than the typical man of substantially equal skill, effort, and responsibility. On similar reasoning, the Ninth Circuit Court of Appeals has noted

---

3.  In the remaining cases cited by Marist, the plaintiff had attempted comparisons across disciplines more distantly related than those here. *See, e.g., Soble v. Univ. of Md.*, 778 F.2d 164, 167 (4th Cir.1985) (rejecting a comparison between plaintiff and Assistant Professors

outside the dentistry school); *Spaulding v. Univ. of Wash.*, 740 F.2d 686, 697–98 (9th Cir.1984) (rejecting a comparison between the school of nursing and other schools in the university).

that where multiple comparators exist, the plaintiff is not permitted simply to select the best-compensated male to establish her case. Rather,

> the proper test for establishing a prima facie case in a professional setting such as that of a college is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale.

*Hein,* 718 F.2d at 916; *see also Pollis,* 913 F.Supp. at 785 ("Once [plaintiff] has introduced evidence tending to show that certain male professors are 'equal' to her ..., I will allow her to average their salaries, and compare this figure to her own salary."); *id.* at n. 8 ("I am ... reluctant to allow plaintiff to identify one equally situated professor, and use that professor's salary to compute her damages. Such an approach would allow [plaintiff] to artificially inflate damages by selecting the highest paid, equally situated professor.").

To be sure, this case differs from *Hein* because here plaintiff has identified only one male comparator. Thus, neither expert averaged the salaries of male comparators who actually existed. Instead, they found it necessary to use the entire Marist faculty to establish a sufficiently large sample size, extrapolating from professors who did not compare to plaintiff across all five variables to predict what a male professor who would have so compared typically would have been paid. *Cf. Pollis,* 132 F.3d at 121 (citing several cases holding that discrimination may not be proven by statistics based on an insufficient sample size). Their conclusions were remarkably consistent. Dr. Parides arrived at a figure of $50,640, as compared to Dr. Ashenfelter's figure of $50,696. Based on the regression analysis she performed before conducting content analysis, Dr. Poris detected a similar disparity. Plaintiff's male comparator, Dr. White, earned $46,168. Therefore, in this case, the pay disparity, and thus plaintiff's damages, were increased when her salary was compared to the statistical composite instead of to the male comparator's actual salary.

It is undisputed that multiple regression analysis, which was used by the experts here, is a scientifically valid statistical technique for identifying discrimination. *See Ottaviani,* 875 F.2d at 367 (Using multiple regression analysis, "individual plaintiffs can make predictions about what job or job benefits similarly situated employees should ideally receive, and then can measure the difference between the *predicted* treatment and the *actual* treatment of those employees."). We hold that, under the circumstances of this case, regression analysis, based on a larger pool of male employees and that controlled for differences within each variable as between the plaintiff and members of the male pool, properly supported plaintiff's case and was appropriately employed to calculate damages. In so holding, we note that, because plaintiff both identified a male comparator and provided statistical evidence of gender-based discrimination, we need not decide whether either type of evidence standing alone would have been sufficient to prove discrimination under the Equal Pay Act.

## II.

On cross-appeal, plaintiff argues that the special verdict form erroneously instructed the jury not to consider her Title VII claim if it found, as it did, that any violation of the Equal Pay Act was not willful. Because plaintiff did not challenge the special verdict form below, we review for plain error. *See* Fed.R.Civ.P. 51; *Latsis v. Chandris, Inc.,* 20 F.3d 45, 49 (2d Cir.1994), *aff'd* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *see also Play Time, Inc. v. LDDS Metromedia Communications, Inc.,* 123 F.3d 23, 29 n. 6 (1st Cir.1997) ("The Rule 51 standard applies to the jury charge and any special verdict form."); *Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 18 (2d Cir.1996) ("[W]e have warned that the plain error exception should only be in-

voked with extreme caution in the civil context. Only where an unpreserved error is so serious and flagrant that it goes to the very integrity of the trial will a new civil trial be warranted." (internal quotation marks, citations and alterations omitted)). The district court here did not commit plain error.

■ The Equal Pay Act and Title VII must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies. *See* Jerald J. Director, Annotation, *Construction and Application of Provisions of the Equal Pay Act of 1963 (29 U.S.C.A. § 206(d)) Prohibiting Wage Discrimination on the Basis of Sex*, 7 A.L.R. Fed. 707 § 4.7 (2000) (listing cases). A key difference between them, of course, is that a Title VII disparate treatment claim requires a showing of discriminatory intent, while an Equal Pay Act claim does not. *See Belfi*, 191 F.3d at 135. If a plaintiff can establish that the defendant's violation of the Equal Pay Act was willful, she may recover damages for up to three years of back pay prior to filing suit, as compared to two years' back pay without a showing of willfulness. *See* 29 U.S.C. § 255(a).

Although the two statutes are to be read together, it is not at all clear that a finding of no willfulness under the Equal Pay Act precludes a finding of intent under Title VII. The Eighth Circuit has noted:

> There is a difference between acting in good faith for Title VII purposes and not acting in a knowing and reckless way so as to violate EPA willfully. We are satisfied that finding no willful EPA violation is not necessarily inconsistent with a concurrent finding of an intentional refusal to promote and in intentionally treating [plaintiff] differently from similar situated males despite her qualifications for Title VII purposes.

*EEOC v. Cherry–Burrell Corp.*, 35 F.3d 356, 360 (8th Cir.1994); *cf. Pollis*, 132 F.3d at 119 (noting that in order to show willfulness under the EPA, a plaintiff "need not show that an employer acted with intent to discriminate"). We doubt whether non-willfulness under the Equal Pay Act is the equivalent of lack of discriminatory intent under Title VII. Nevertheless, this circuit has never plainly adopted a rule of non-equivalence and we need not do so now to decide this case.

■ To constitute plain error, a court's action must contravene an established rule of law. *See United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that a court of appeals cannot reverse for plain error "unless the error is clear under current law"). There is no such plain error here. In light of the above-noted similarities between the Equal Pay Act and Title VII, *see, e.g., Cherry–Burrell*, 35 F.3d at 360 ("Where, as here, plaintiff raises a claim of unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act.") (internal quotation marks omitted), and in the absence of any objection at trial, we will not disturb the district court's use of the special verdict form at trial.

## CONCLUSION

For the reasons above, we affirm the judgment of the district court in its entirety.