James Donnell LAWSON, Plaintiff,

v.

COUNTY OF SUFFOLK, Officer Arturo Salazar, Officer Raphael Fragola and Officer John Graziano, Defendants.

No. 10–CV–1683 (ADS)(WDW).

United States District Court,
E.D. New York.

Jan. 26, 2013.

Emery Celli Brinckerhoff & Abady LLP by Eisha Jain, Esq., O. Andrew F. Wilson, Esq., of Counsel, New York, NY, for Plaintiff.

Suffolk County Dept. of Law—County Attorney by Brian C. Mitchell, Assistant County Attorney, Hauppauge, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The Plaintiff in this case, James Donnell Lawson ("the Plaintiff"), alleged that Suffolk County Police Officers Arturo Salazar ("Salazar"), Officer Raphael Fragola ("Fragola") and John Graziano ("Graziano," and collectively, "the Officers") used excessive force against him. Based on this allegation, the Plaintiff brought this action against the Officers and the County of Suffolk (collectively, "the Defendants"), in which he asserted a 42 U.S.C. § 1983 claim for excessive force in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as claims for (1) assault and battery; (2) negligence; and (3) negligent hiring, training, discipline and retention of employment services. A trial was held and the jury returned a verdict in favor of the Defendants. Presently before the Court is the post-trial motion filed by the Plaintiff for judgment as a matter of law or, in the alternative, for a new trial.

## I. BACKGROUND

### A. Factual Background

#### 1. The Officers' Testimony

On January 17, 2009, at approximately 3:00 a.m., the Plaintiff and the Officers were involved in an altercation outside a church hall in Central Islip, New York. The ground on which the altercation took place was "like broken concrete," was covered in snow and ice and was "slippery." (Tr. 276, 282.) According to the Officers' testimony, the Plaintiff, upset that an am-

bulance had not yet arrived to help his injured friend, Eugene Ramsey ("Ramsey"), stated "this is nonsense, bullshit. You guys aren't doing anything" and then shoved Salazar in the chest with both hands. (Tr. 273–74.) In response, Salazar threw a punch toward the Plaintiff's head.

Subsequently, a struggle ensued in which Fragola and Graziano also became involved. In this regard, Salazar testified that he grabbed the Plaintiff's left arm with his right hand. Similarly, Fragola testified that after he saw the Plaintiff shove Salazar, he grabbed the Plaintiff's left arm. Finally, Graziano testified that, upon observing the Plaintiff shove Salazar, he "immediately ran over[,] [ ] grabbed [the Plaintiff] by the back of the jacket . . . and [ ] ripped him back . . . in the backwards motion." (Tr. 439.) The Officers and the Plaintiff then slipped on the ice. The Officers testified that the Plaintiff fell backward and hit his head on the ground. Fragola testified that he fell to the ground with the Plaintiff. Salazar fell forward on top of the Plaintiff. Graziano fell on his stomach next to the Plaintiff, his face toward the Plaintiff.

Apparently, while still on his back, the Plaintiff's flailed his arms. He then quickly rolled over onto his stomach. The Officers tried to handcuff the Plaintiff, but the Plaintiff allegedly kept moving his arms to prevent the Officers from grabbing them. At this point, Salazar was straddling the Plaintiff, Graziano was laying on top of the Plaintiff's legs and back and Fragola was on the side of the Plaintiff. Graziano "hear[d] the verbal commands of 'stop resisting' and 'put your hands behind your back' numerous times," but the Plaintiff did not comply. (Tr. 453.)

The Plaintiff moved his arms underneath him, further frustrating the Officers attempt to handcuff him. As a result, Salazar struck the Plaintiff two to four times in his back torso in order "to make

him flinch or available so the other officer would be able to grab his hand for that split second to soften him up so he is not so tense." (Tr. 279.) In addition, at some point during the struggle, Fragola knelt beside the Plaintiff while he laid face-down to the ground and punched the Plaintiff twice in the face. Fragola punched the Plaintiff so hard that he bruised his knuckle and was instructed not to work for a month to allow the bruise to heal.

Eventually, the Officers were able to get handcuffs on the Plaintiff and he was arrested. The Officers took the Plaintiff to the precinct to be interviewed by the sergeant. However, while at the precinct, Salazar observed a laceration to the back of the Plaintiff's head and bruising on the Plaintiff's cheek area. Salazar transported the Plaintiff to Southside Hospital. At the hospital, the Plaintiff received seven staples for his laceration and was treated for his other bruises and cuts. The Officers denied using any object, including a baton, flashlight or radio, to strike the Plaintiff in the head.

### 2. The Plaintiff's Testimony and Expert Witnesses

The Plaintiff's testimony tells a different story than that of the Officers. According to the Plaintiff, he approached Salazar to try to get help for Ramsey, who had been the victim of a stabbing. However, when he tapped Salazar on the shoulder, Salazar allegedly turned around and punched him. The Plaintiff stumbled back and Salazar grabbed his jacket and pulled it over the Plaintiff's head. The Plaintiff testified that he "felt more blows to [his] face and a hard object hit [him] in the head." (Tr. 150.) After he felt the hard object hit him, the Plaintiff "saw white and [ ] hit the ground." (Tr. 150.) While on the ground, the Plaintiff "felt more blows to [his] head and body and [ ] was then handcuffed."

(Tr. 150.) The Plaintiff denied doing anything to provoke the Officers. The Plaintiff's testimony is consistent with the account he gave hospital personnel on the morning of January 17, 2009, which was included in the Southside Hospital medical records that were admitted into evidence.

The evidence at trial showed that there was no blood on the snow-covered ground where the altercation between the Officers and the Plaintiff took place, nor was there any blood on the collar or outside of either of the two jackets that the Plaintiff was wearing the morning of January 17, 2009. However, there was a large blood stain located on the inside of the Plaintiff's jacket in the lower portion of the back and next to the left shoulder.

With respect to the laceration the Plaintiff suffered, the Plaintiff's expert Dr. Ronald Paynter testified that the "nature of the injury ... [was] consistent with getting hit by ... a stick or a metal rod of some type," because the injury was "linear," described in the medical record as a straight wound." (Tr. 82.) Dr. Paynter explained that "if a person were to fall on the ground, backwards, and hit their head on a flat surface like the ground, the laceration would have a different appearance." (Tr. 82.) This appearance would be a "stellar pattern, which comes from the word 'star,' which means when it hits a flat object, it gets dispersed, like three of four arms to it." (Tr. 82–83.) Dr. Paynter also noted that the medical records indicated that there was no foreign body, such as debris, grit, dirt, grass, pebbles or anything that could be on the ground, in the wound.

The Plaintiff's other expert, Dr. Peter Pizzola, testified that the blood stains inside of the Plaintiff's jacket "were obtained by direct contact by transfer, or some object, such as [the Plaintiff's] wound site, and that would include the area of the lower portion of the jacket and also up by the left shoulder area." (Tr. 325–26.) Dr. Pizzola stated that he did not see any evidence that the blood stain on the Plaintiff's jacket was produced by the Plaintiff hitting his head while his jacket was in the normal position:

> I have seen no indication of any drip pattern on the outside of the jacket, no blood spattering on the outside of the jacket. There is none on the interior side of the collar, nor on the back of the collar, and no indication of any drippings on the inside of the lining.

(Tr. 326.) However, Dr. Pizzola admitted that in making his analysis he assumed that the source of the blood on the jacket was the Plaintiff and that he had not considered the possibility that that the blood had come from a different source. Dr. Pizzola conceded that if the blood did come from a different source, his analysis would be flawed.

### B. Procedural History

The trial commenced on March 20, 2012 and continued until March 27, 2012, when the jury reached a verdict in favor of the Defendants. At the trial, as indicated above, the Plaintiff testified himself, as well as his two experts, Dr. Paynter and Dr. Pizzola. The Officers also each testified, as did Detective Mark Bendetti, who interviewed the Plaintiff at Southside Hospital on the morning of January 17.2009, about three hours after the altercation had occurred. Evidence presented during the trial included, but was not limited to, (1) photographs of the crime scene, which were produced in connection to the investigation concerning the stabbing of Ramsey; (2) the Plaintiff's medical records from Southside Hospital; (3) subject incident reports completed by the Officers documenting the altercation and (4) photographs of the Plaintiff's jacket, including the blood stain on the inside of the jacket.

After the Plaintiff's case was completed, the Defendants moved for judgment as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 50. The Court denied the Defendants' motion. In denying the motion, the Court stated that "[t]here is sufficient evidence for both Section 1983, excessive force, and New York State battery causes of action. Very clear, sufficient evidence. A lot of that was admitted by the [D]efendants." (Tr. 540.)

At the conclusion of the testimony, the Plaintiff moved for JMOL pursuant to Fed.R.Civ.P. 50. The Court reserved decision on this motion and submitted the case to the jury. The Defendants then moved to submit pointed interrogatories to the jury so that a determination could be made with respect to the application of qualified immunity should the jury return a verdict in favor of the Plaintiff. The Court denied the Defendant's application, stating that "I find that they violated clearly established constitutional rights and would not qualify for qualified immunity." (Tr. 668.) The Court explained "it's the fact even taking into consideration what the [D]efendants said. My goodness, they are all punching him and laying on him. What kind of qualified immunity?" (Tr. 667.)

After the jury returned a verdict in favor of the Defendants, the Court ruled on the Plaintiff's motion for JMOL pursuant to Fed.R.Civ.P. 50. Although noting that "[i]t was very close in my opinion," the Court ultimately denied the Plaintiff's motion. (Tr. 852.) In this regard, the Court held:

> ... I think it is a question for the jury. They determined that there was no excessive force nor was there a battery.
>
> And I think there is some evidence, some evidence in support of that; namely, the fact that the plaintiff allegedly pushed the police officer with both hands, hard, and started the fracas, and was difficult to gain under control, according to the defendants.

(Tr. 852–53.)

On April 23, 2012, the Plaintiff filed the instant motion for JMOL pursuant to Fed. R.Civ.P. 50(b), or in the alternative, a new trial pursuant to Fed.R.Civ.P. 59(a). The Plaintiff argues that the Officers' own admissions that they punched the Plaintiff while he was face down on the ground, even though he was flailing his arms, establish that they used excessive force in violation of the Plaintiff's constitutional rights. The Defendants opposed the motion.

## II. DISCUSSION

### A. *Legal Standards*

#### 1. **The Renewed Motion for Judgment as a Matter of Law**

 In substance, Fed.R.Civ.P. 50(b) provides that if a jury returns a verdict for which there is not a legally sufficient evidentiary basis, the district court may either order a new trial or direct the entry of judgment as a matter of law. In order to grant a motion for JMOL, there must be a " 'complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men [and women] could not arrive at a verdict against [it].' " *Lavin–McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir.2001) (quoting *DiSanto v. McGraw–Hill, Inc.*, 220 F.3d 61, 64 (2d Cir.2000)); *see also Concerned Area Residents for Environment v. Southview Farm*, 34 F.3d 114, 117 (2d Cir.1994); *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992); *Mattivi v. South African*

*Marine Corp. "Huguenot",* 618 F.2d 163, 168 (2d Cir.1980).

■ "The same standard that applies to a pre-trial motion for summary judgment pursuant to Fed.R.Civ.P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." *Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir. 1993); *see also* the Advisory Committee Note to the 1991 Amendment of Fed. R.Civ.P. 50. This Rule is well and clearly explained in the seminal case of *This Is Me, Inc. v. Elizabeth Taylor,* 157 F.3d 139 (2d Cir.1998). In *Taylor,* the Court commented that the then recent adoption of the term "judgment as a matter of law" to replace both the term "directed verdict" and the term "judgment N.O.V." was intended to call attention to the close relationship between Rule 50 and 56. 157 F.3d at 142. The Court then went on to explain the basis for granting a post-verdict Rule 50 motion, as follows:

> A district court may not grant a motion for a judgment as a matter of law unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir. 1994) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation marks omitted). Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that "a reasonable juror would have been compelled to accept the view of the moving party." *Piesco,* 12 F.3d at 343.

*Id.; see also Fabri v. United Techs. Int'l Inc.,* 387 F.3d 109, 119 (2d Cir.2004) (same); *Sanders v. New York City Hu-*

*man Res. Admin.,* 361 F.3d 749, 755 (2d Cir.2004).

■ When ruling on a motion for JMOL, the court must " 'consider the evidence in the light most favorable to the [non-moving party] and ... give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.' " *Concerned Residents for the Env't v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995), (quoting *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 367 (2d Cir.1988)). The court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir.2001). Accordingly, when ruling on a motion brought pursuant to Rule 50, the court may not rule on the credibility of the witnesses or the weight of the evidence. *Caruso v. Forslund,* 47 F.3d 27, 32 (2d Cir.1995). Rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury. *See Williams v. Cnty. of Westchester,* 171 F.3d 98, 101 (2d Cir. 1999).

■ A JMOL is thus "proper only if 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' " *Fiacco v. City of Rensselaer,* 783 F.2d 319, 329 (2d Cir.1986) (quoting *Simblest,* 427 F.2d at 4). Such motions "should be granted cautiously and sparingly." 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2524, at 252 (1995); *Japan Air-*

lines Co. Ltd. v. Port Auth. of New York & New Jersey, 178 F.3d 103, 112 (2d Cir. 1999).

## 2. The Motion for a New Trial

■ Under Federal Rule of Civil Procedure 59 ("Fed.R.Civ.P. 59" or "Rule 59"), a court "may, on motion, grant a new trial on all or some of the issues—and to any party—... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). " 'A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice.' " *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998) (quoting *Song v. Ives Labor., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992)). The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive. 12 Moore's Federal Practice, § 59.13[1] at 59–43 (3d Ed. 2005).

In comparison to a Rule 50 motion for judgment as a matter of law, the Second Circuit has held that the standard for a Rule 59 motion in some respects is less onerous for the moving party in two ways: first, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp.,* 163 F.3d at 134. Second, in deciding a Rule 59 motion "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* However, the granting of a new trial is an extraordinary relief, and one that "is properly granted only upon a showing of exceptional circum-

stances." *U.S. v. International Broth. of Teamsters,* 247 F.3d 370, 391 (2d Cir.2001).

## B. As to the Plaintiff's Motion for Judgment as a Matter of Law

■ In this case, the Plaintiff argues that the Officer's testimony alone establishes that the Plaintiff is entitled to JMOL because a reasonable juror would have been compelled to find that the Officers used excessive force in their altercation with the Plaintiff on January 17, 2009. Specifically, the Plaintiff asserts that the Officers' "only justification for using force against [the Plaintiff] (their own testimony that [the Plaintiff] shoved [ ] Salazar and 'flailed his arms')[ ] is not enough to support the jury's verdict that the force was reasonable here." (Pl. Motion, pg. 4.) In opposition, the Defendants argue that "there is more than sufficient evidence for the jury to have made a determination (as instructed in the jury charge) that the conduct of the [P]laintiff justified the use of force by the [Officers] and that the force used was reasonable and necessary to effect the arrest of the [P]laintiff." (Def. Opp., pg. 6.)

■ "The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006). A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.' " *Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir.2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In this regard, although "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the

officer's use of some degree of force, [ ] it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–166 (2d Cir.2000). Rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 166. However, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.' " *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 397, 109 S.Ct. 1865).

In deciding whether an officer used excessive force, the fact finder must consider the facts and circumstances of each particular case, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (2d Cir.2010) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Jones*, 465 F.3d at 61); *see also Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) (internal quotation marks omitted). In judging an officer's actions, the fact finder must not substitute its own viewpoint. Rather, the fact finder "must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Jones*, 465 F.3d at 61 (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

In this case, the Plaintiff asks the Court to rely on the admissions made by the Officers during their testimony in order to hold that they the Officers used excessive force when they arrested the Plaintiff. However, the Court finds that these admissions alone do not entitle the Plaintiff to a JMOL. "[D]rawing all inferences in favor of the non-moving party and giving deference to all credibility determinations of the jury," the Court finds that the Plaintiff has not established that the evidence "is insufficient to permit a reasonable juror to find in [the Defendants'] favor." *Lavin–McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir.2001).

The Officers' testimony paints a picture in which the Plaintiff, angry and cursing because an ambulance had not yet arrived for his friend, initiated the altercation between himself and the Officers by shoving Salazar, thereby putting the Officers on the defensive. Salazar, along with Fragola and Graziano, immediately took action to subdue the Plaintiff, which included Salazar punching the Plaintiff in the face. Once on the ground the Plaintiff did not cease resisting the Officers attempt to arrest him, but instead struggled with and flailed his arms at the Officers, even though the Officers instructed him to stop resisting and to place his hands behind his back. During this struggle, Fragola punched the Plaintiff twice in the face. At some point, while lying face down on the ground, the Plaintiff put his arms underneath his chest to further frustrate the Officers attempts to handcuff him. As a result, Salazar struck the Plaintiff two to four times in the back in order to get the Plaintiff to free his arms so that the Officers could place the Plaintiff under arrest. Graziano made no admissions as to striking or punching the Plaintiff during the altercation.

In *Husbands ex rel. Forde v. City of New York*, 335 Fed.Appx. 124, 128–29 (2d Cir.2009), the Second Circuit held that a punch to a suspect's torso "[wa]s insufficient as a matter of law to support of finding of force beyond what was necessary to subdue [the suspect] and apply handcuffs." Although in this case the Officers hit the Plaintiff a total of four to six times instead of just once, a reasonable juror still could have found that the use of force by the Officers was necessary to subdue the Plaintiff and place handcuffs on him. Moreover, the injuries the Plaintiff suffered as a result of Fragola's and Salazar's punches—namely bruises—were *de minimis*; "a *de minimis* use of force rarely will suffice to state a Constitutional claim." *See Williams v. City of New York*, 05 Civ. 10230(SAS), 2007 WL 2214390, at *11, 2007 U.S. Dist. LEXIS 55654, at *45 (S.D.N.Y. July 27, 2007) (quoting *Graham*, 490 U.S. at 393–94, 109 S.Ct. 1865).

■ Indeed, as other courts within the Second Circuit have recognized, "[t]he right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest." *Faruki v. City of New York*, 10 Civ. 9614(LAP), 2012 WL 1085533, at *6, 2012 U.S. Dist. LEXIS 47310, at *17 (S.D.N.Y. Mar. 30, 2012) (granting the defendants' motion for summary judgment on the plaintiff's excessive force claim where the Plaintiff was yelling, screaming and kicking and the plaintiff's injuries were *de minimis* ); *McMillan v. City of New York*, 10 Civ. 2296(PAC), 2011 WL 6129627, at *10, 2011 U.S. Dist. LEXIS 141880, at *32–34 (S.D.N.Y. Dec. 9, 2011) ("After the officers partially handcuffed McMillan, she continued to flail her arms and kick her legs. Under those circumstances, a reasonable officer would have concluded that some degree of force was necessary to subdue McMillan and place her under arrest."); *Lagasse v. City of Waterbury*, CIVIL ACTION NO. 3:09cv391(VLB), 2011 WL 2709749, at *8, 2011 U.S. Dist. LEXIS 74503, at *24 (D.Conn. July 12, 2011) (finding where a police officer "used limited physical force, in the form of two palm strikes and the application of an arm bar, to defend himself and overcome [the plaintiff's] resistance to effect his restraint and ultimate arrest," that "[a] reasonable officer could conclude that the level of force used ... was objectively reasonable in light of the circumstances"); *Faulks v. City of Hartford*, CIVIL ACTION NO. 3:08–cv–270 (VLB), 2010 WL 259076, at *12, 2010 U.S. Dist. LEXIS 3677, at *34–35 (D.Conn. Jan. 19, 2010) (finding that the officers' use of force, which included becoming physical, struggling with the Plaintiff, striking the plaintiff three times in the shoulder and using their batons in an effort to get the plaintiff onto the ground and into handcuffs, was objectively reasonable in light of the circumstances where the plaintiff refused to bend over and tried to stand upright).

Further, the Court finds that the cases from this Circuit which the Plaintiff relies on in bringing his motion are inapplicable. In *Ostroski v. Town of Southold*, 443 F.Supp.2d 325 (E.D.N.Y.2006), the court decided, in relevant part, a summary judgment motion that was brought by the individual officer defendants to dismiss the plaintiff's claims that they used excessive force under 42 U.S.C. § 1983. "View[ing] the evidence in the light most favorable to the party opposing summary judgment, [ ] draw[ing] all reasonable inferences in favor of that party, and [ ] eschew[ing] credibility assessments," *id.* at 331, the court denied the individual officer defendants' motion because they "failed to demonstrate the absence of a material fact with respect to [the] plaintiff's excessive force claim," *id.* at 342. The court explained:

[C]ountervailing testimony exists in the record that, if believed, indicates that: (1) the defendant officers initiated the use of force against plaintiff before she started to resist arrest; and (2) plaintiff did not [resist] and defendant officers continued to use force against the plaintiff, even after she was subdued on the ground. Specifically, Florence Ostroski testified at [her criminal] trial that an officer struck plaintiff first, following her protestations regarding the officers going upstairs to retrieve the guns without a warrant. Further, Florence Ostroski testified that, after the defendant officers had subdued and handcuffed plaintiff, they kicked her, kneed her in the back, punched her in the back of the head and twisted her neck. Plaintiff also testified that the officers lunged at her first, and kicked her and twisted her neck after she had been handcuffed. If the accounts of plaintiff and Florence Ostroski are credited, the Court cannot hold that the conduct of the defendant officers constituted an objectively reasonable use of force as a matter of law.

*Id.* (citations omitted.)

First, as an initial matter, the Court notes that while the *Ostroski* court was required to construe the facts in the light most favorable to the plaintiff, the Court here must construe the facts in favor of the Defendant Officers, as they are the non-moving party. Further, the facts in *Ostroski* contain significant differences from those presented in the Officers' testimony in the instant case. Unlike in *Ostroski*, the Plaintiff, not the Officers, initiated the use of force by shoving Salazar. Moreover, despite the Plaintiff's arguments to the contrary, the Plaintiff was not subdued when the Officers hit him but was still attempting to prevent the Officers from handcuffing him. The Officers did not admit to hitting or using any other kind of force against the Plaintiff once they had handcuffed the Plaintiff. Con-

versely, in *Ostroski*, Ostroski was already in handcuffs when the individual officers allegedly "kicked her, kneed her in the back, punched her in the back of the head and twisted her neck." *Id.*

Similarly, the Plaintiff's reliance on *Pierre–Antoine v. City of New York,* 04 Civ. 6987(GEL), 2006 WL 1292076, 2006 U.S. Dist. LEXIS 28963 (S.D.N.Y. May 9, 2006), is misplaced. "[C]onstru[ing] the evidence in the light most favorable to the nonmoving party [the plaintiff]," *id.* at *2, 2006 U.S. Dist. LEXIS 28963 at *7, the *Pierre–Antoine* court, in relevant part, also denied the defendants' motion for summary judgment on the plaintiff's § 1983 excessive force claim, which he had brought against one of the individual officers. In particular, the court held that the "[d]efendants have failed to show the absence of a genuine issue of material fact with respect to [the plaintiff's] claim that [Officer Williams] used excessive force[.]" *Id.* at *4, 2006 U.S. Dist. LEXIS 28963 at *12. In this regard, the court pointed to the plaintiff's "sworn testimony," which

describe[d] a scene in which officers repeatedly punched, kicked, and stomped on him, despite the fact that he did not fight back and despite his repeated attempts to explain that he was disabled.... Moreover, [the] plaintiff testified that the officer who grabbed the cane sword was one of the officers who threw him down, and [the] defendants concede that it was Williams who took hold of the sword. In addition, [the plaintiff's] testimony suggests that he was further assaulted after he was handcuffed, when a claim of necessary force would be much harder to maintain. If a jury were to credit [the plaintiff's] version of the events, it *could* reasonably find Williams liable for using objectively unreasonable force and/or for failing to intercede to prevent the use of objec-

tively unreasonable force by other officers.

*Id.* at *4, 2006 U.S. Dist. LEXIS 28963 at *12–13 (emphasis added). Thus, the *Pierre–Antoine* court did not determine that such facts permitted a finding of excessive force as a matter of law, but rather, recognized that a jury *could* reasonably find Officer William used excessive force based on these facts. Here the jury declined to find such excessive force by the Officers.

In addition, the Court again notes that it must construe the facts in favor of the Defendant Officers, as they are the non-moving party, and not in favor of the plaintiff, as the *Pierre–Antoine* court was required to do. Here, in order to subdue the Plaintiff and handcuff him, the Officers only struck or punched the Plaintiff four to six times. This differs considerably from the situation described by the plaintiff in *Pierre–Antoine*, where he was "repeatedly punched kicked and stomped" by the officers. *Id.* Indeed, the *Pierre–Antoine* plaintiff alleged that he was "punched so many times in the head that he [did] not remember whether he was kicked in the head as well." *Id.* at *1, 2006 U.S. Dist. LEXIS 28963 at *4. Furthermore, the Officers never admit to using force once the Plaintiff was handcuffed. Lastly, nothing in the Officers testimony suggests that the Plaintiff in this case ever tried to explain to the Officers that he was disabled, like the *Pierre–Antoine* plaintiff did. Instead, the Officers testimony indicates that they told the Plaintiff to stop resisting arrest and yet he continued to frustrate their attempts to handcuff him.

Accordingly, the Court finds that the Plaintiff has failed to demonstrate that "the evidence, drawing all inferences in favor of the non-moving party and giving deference to all credibility determinations of the jury, is insufficient to permit a reasonable juror to find in [the Defen-

dants'] favor." *Lavin–McEleney,* 239 F.3d at 480. The Plaintiff's 50(b) motion for JMOL is denied.

### C. As to the Plaintiff's Motion for a New Trial

█ In the alternative, the Plaintiff argues that he is entitled to a new trial pursuant to Fed.R.Civ.P. 59, because "the jury's verdict that none of the [O]fficers used force was manifestly erroneous." (Pl. Motion, pg. 8, citations and internal quotation marks omitted.) The Plaintiff basis this argument on the following factors: (1) the Officers admitted to using force against the Plaintiff while he was lying face-down on the ground; and (2) the Plaintiff only flailed his arms, but did not try to flee, did not have a weapon and did not attempt to strike or injure the Officers. (Pl. Motion, pg. 9.) The Plaintiff further points to the inconsistencies in the Officers' testimony and the objective evidence, including the crime scene photographs, the Plaintiff's medical records and the blood stains on the inside of the Plaintiff's jacket from the night of the altercation, to show that the jury's verdict went against the weight of evidence. According to the Plaintiff, this evidence suggested that he was subjected to even more force than the Officers admitted and supported his version of the incident. (Pl. Motion, pg. 10.)

As an initial matter, the Court notes that despite the Defendants' suggestion to the contrary, the Plaintiff's motion for a new trial is timely, as it was filed within 28 after the entry of judgment. Fed.R.Civ.P. 59(b). Nevertheless, the Court does not agree that the Plaintiff is entitled to a new trial in this case.

█ As discussed above, "[a] new trial is justified if the district court finds that 'the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice, i.e., that the verdict is

against the weight of the evidence, that the damages awarded were excessive, or that for stated reasons the trial was not fair to the moving party.'" *Pierrelouis v. Bekritsky,* 08 Civ. 123(KTD), 2012 WL 6700217, at *3, 2012 U.S. Dist. LEXIS 182295, at *9–10 (S.D.N.Y. Dec. 21, 2012) (quoting *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983)). While "the court may weigh the evidence and assess 'the verdict in the overall setting of trial,'" *Rivers v. City of Rochester,* 856 F.Supp.2d 620, 622 (W.D.N.Y.2012) (quoting *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978)), "a 'trial judge's disagreement with the jury's verdict is not sufficient reason to grant a new trial,'" *Kittay v. Korff (In re Palermo),* 08 CV 7421(RPP), 2011 WL 3874866, 2011 U.S. Dist. LEXIS 99537 (S.D.N.Y. Sept. 2, 2011) (quoting *Mallis,* 717 F.2d at 691). Moreover, "[a] jury's credibility assessments are entitled to deference, and . . . where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *United States v. Landau,* 155 F.3d 93, 104–105 (2d Cir.1998) (citations and internal quotation marks omitted); *see also Wong v. Mangone,* 450 Fed.Appx. 27, 31 (2d Cir.2011) ("The jury's credibility determinations are entitled to deference.").

Importantly, the jury's verdict in this case "[wa]s predicated almost entirely on the jury's assessments of credibility." *Raedle v. Credit Agricole Indosuez,* 670 F.3d 411, 418 (2d Cir.2012). In this regard, in order to reach a verdict, the jury was required to assess the credibility of the Plaintiff and the Officers and their version of events in order to determine whether, given the circumstances surrounding the January 17, 2009 altercation, the use of force by the Officers was objectionably reasonable. The Second Circuit has indicated that "such a verdict generally should not be disturbed except in an

egregious case, to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Id.* at 418 (2d Cir.2012).

Here, the Plaintiff asserts that the verdict is against the weight of the evidence. However, a reasonable jury could have found that the amount of force admitted to by the Defendants was reasonable in light of the circumstances. In addition, a reasonable jury could have found that the Plaintiff's allegation that he merely tapped Salazar on the shoulder and then, as a result, Salazar and the other Officers assaulted him to be incredible. *See Raedle,* 670 F.3d at 419 (" '[T]he veracity of [a witness's] statements . . . was a matter of credibility for the jury to resolve.' ") (quoting *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 875 (2d Cir.1992)) (internal alterations omitted).

The Plaintiff's new trial motion also emphasizes the analysis by experts Paynter and Pizzola of (1) the crime scene photographs; (2) the Plaintiff's medical records; and (3) the bloodstains on the inside of the Plaintiff's jacket. Yet, the Plaintiff overlooks that the testimony of the Plaintiff's expert witnesses must be assessed by the jury in terms of credibility. For example, a reasonable jury may have had doubts about Pizzola's testimony because he had not verified that the blood inside the Plaintiff's jacket was actually the Plaintiff's, thereby undercutting his entire analysis. Moreover, the jury was not required to accept Paynter's position that the Plaintiff's head laceration was the result of him having been struck in the head with a hard object. Nor was the jury required to accept the Plaintiff's version of events simply because of Paynter's testimony. Rather, the jury could have rejected the Paynter's analysis of the Plaintiff's medical records or not have accepted the Plaintiff's explanation for his laceration.

As such, the Court finds no grounds on which to disturb the jury's verdict. This is not "an egregious case" where the verdict must be set aside "to correct a seriously erroneous result, or to prevent a miscarriage of justice." *Raedle*, 670 F.3d at 418–19. Therefore, the Court denies the Plaintiff's motion for a new trial.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's renewed motion for judgment as a matter of law is denied; and it is further

**ORDERED** that the Plaintiff's motion for a new trial is denied.

**SO ORDERED.**